******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# MILFORD REDEVELOPMENT & HOUSING PARTNERSHIP *v.* LISA GLICKLIN
## (AC 46290)

Bright, C. J., and Alvord and Clark, Js.

*Syllabus*

The plaintiff public housing authority appealed from the judgment of the trial court for the defendant in its summary process action. It claimed, inter alia, that the court improperly raised, sua sponte, the unpleaded special defense of cure to defeat its action. *Held*:

The trial court had subject matter jurisdiction to hear the plaintiff's summary process action, as, contrary to the defendant's claim, the plaintiff's pretermination notice to her was not jurisdictionally or legally defective.

The trial court improperly considered the special defense of cure in rendering judgment for the defendant, as the defendant did not plead that special defense.

The trial court applied an incorrect legal standard by improperly placing the burden of proof on the plaintiff with respect to the defendant's unpleaded special defense.

Argued May 29—officially released October 15, 2024

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of New Haven, Housing Session, and tried to the court, *Spader, J.*; judgment for the defendant, from which the plaintiff appealed to this court. *Reversed*; *new trial*.

*Christine M. Gonillo*, for the appellant (plaintiff).

*Tyrese M. Ford*, with whom was *Shelley A. White*, for the appellee (defendant).

*Opinion*

ALVORD, J. In this summary process action, the plaintiff, Milford Redevelopment & Housing Partnership, appeals from the judgment of the trial court rendered in favor of the defendant, Lisa Glicklin. The plaintiff

initiated this summary process action against the defendant claiming that the defendant repeatedly violated the plaintiff's smoke-free housing policy. In rendering judgment for the defendant, the trial court rejected the plaintiff's claim on the basis that the plaintiff failed to prove that the defendant had not cured the violation of the plaintiff's policy. On appeal, the plaintiff raises interrelated claims. First, it claims that the court improperly raised sua sponte the unpleaded special defense of cure to defeat its summary process action. Second, it claims that, even if it was proper for the court to raise the special defense of cure sua sponte, the court improperly placed the burden on the plaintiff to prove that the defendant did not cure her violations. The defendant, in addition to disputing the plaintiff's claims, argues that the trial court lacked subject matter jurisdiction over the action because of alleged inadequacies in the pretermination notice[1] provided to the defendant. For the reasons that follow, we reject the defendant's jurisdictional argument and agree with the plaintiff that the court improperly rendered judgment in favor of the defendant.[2] Accordingly, we reverse the judgment of the court.

[1] Federal regulations refer to the notice as a "termination notice." See 24 C.F.R. § 274.4 (2021). We, however, "use the term 'pretermination [notice]' in this opinion to reflect the fact that the federal notice precedes a notice to quit, which is the sole mechanism to terminate a tenancy under Connecticut law." *Presidential Village, LLC* v. *Perkins*, 332 Conn. 45, 47 n.1, 209 A.3d 616 (2019). Both the plaintiff and the defendant also have used the term "pretermination notice" throughout the trial and appellate court proceedings.

[2] The defendant also contends, as an alternative ground for affirming the judgment of the trial court, that the plaintiff waived its right to evict the defendant by renewing her lease in the intervening time between the issuance of the pretermination notice and the service of the notice to quit. We decline to review the defendant's proposed alternative ground for affirming the judgment because the record is inadequate for review. First, although the defendant raised as a special defense that the plaintiff "accepted rent or otherwise waived the Notice to Quit after I received it," the trial court did not address this special defense. "It is well known that [o]nly in [the] most exceptional circumstances can and will this court consider [an alternative

The following facts, as found by the trial court or as undisputed in the record, and procedural history are relevant to our resolution of this appeal. The defendant has been a tenant of 100 Viscount Drive, Apartment C12, in Milford (property) for more than ten years. The plaintiff, which is a public housing authority (PHA), owns and operates the property in accordance with federal regulations. The plaintiff, as mandated by title 24 of the Code of Federal Regulations, § 965.653,[3] requires its tenants to sign a smoke-free housing policy (no-smoking policy), which provides, inter alia, "Smoking outside [the plaintiff's] building is limited to specific

ground for affirmance] . . . that has not been raised and *decided* in the trial court." (Emphasis in original; internal quotation marks omitted.) *Circulent, Inc.* v. *Hatch & Bailey Co.*, 217 Conn. App. 622, 635 n.7, 289 A.3d 609 (2023). The defendant has presented no argument that this case presents an exceptional circumstance to warrant our review. Second, the record lacks the requisite factual findings necessary for us to decide this claim. See *Hartford* v. *McKeever*, 314 Conn. 255, 274, 101 A.3d 229 (2014) (Appellate Court was not required to review alternative ground for affirmance "when the record was inadequate for review of the claim because the trial court had not made the requisite factual findings").

[3] Title 24 of the 2021 edition of the Code of Federal Regulations, § 965.653, provides: "(a) In general. PHAs must design and implement a policy prohibiting the use of prohibited tobacco products in all public housing living units and interior areas (including but not limited to hallways, rental and administrative offices, community centers, day care centers, laundry centers, and similar structures), as well as in outdoor areas within 25 feet from public housing and administrative office buildings (collectively, 'restricted areas') in which public housing is located.

"(b) Designated smoking areas. PHAs may limit smoking to designated smoking areas on the grounds of the public housing or administrative office buildings in order to accommodate residents who smoke. These areas must be outside of any restricted areas, as defined in paragraph (a) of this section, and may include partially enclosed structures. Alternatively, PHAs may choose to create additional smoke-free areas outside the restricted areas or to make their entire grounds smoke-free.

"(c) Prohibited tobacco products. A PHA's smoke-free policy must, at a minimum, ban the use of all prohibited tobacco products. Prohibited tobacco products are defined as:

"(1) Items that involve the ignition and burning of tobacco leaves, such as (but not limited to) cigarettes, cigars, and pipes.

"(2) To the extent not covered by paragraph (c) (1) of this section, waterpipes (hookahs)."

area(s) that are defined on a property-by-property basis. Each resident will be given a site map that indicates the specific locations." The no-smoking policy further provides: "Failure of any Tenant to follow the [no-smoking] policy will be considered a lease violation and will subject the resident to all lease enforcement procedures under the [plaintiff's] Admissions and Continued Occupancy Policy (ACOP), which include termination of lease." The property has a designated smoking area that is located twenty-five feet from the entrance to the building.

On July 26, 2021, the defendant signed a copy of the no-smoking policy and attested: "I have read and understand the above smoking policy, and I agree to comply fully with the provisions. I understand that failure to comply may constitute cause for termination of my lease." On October 1, 2021, the defendant entered into a written lease with the plaintiff to renew her use and occupancy of the property. On June 8, 2022, the plaintiff's video surveillance system captured the defendant smoking within twenty-five feet of the building. On June 13, 2022, the plaintiff caused a pretermination notice to be sent to the defendant on the basis that she had "smoked within twenty-five feet of [the building], despite prior warnings and having full knowledge of [the no-smoking policy]." The pretermination notice informed the defendant that she had a right to initiate the plaintiff's federally mandated grievance process by contacting the plaintiff "no later than ten days after you receive this notice, or by June 27, 2022," and provided the ways in which she could contact the plaintiff.[4] Additionally, the pretermination notice included a cure provision, which provided: "If the above violations cannot

---

[4] Specifically, the pretermination notice stated: "You have a right to use the Tenant Grievance Procedures to address the issues contained in this [pretermination notice]. In order to do this, you MUST do BOTH of the following: i) Contact [the plaintiff] no later than ten days after you receive this Notice, or by June 27, 2022; and ii) Make a specific request to use the tenant grievance procedures. You may contact [the plaintiff] to request to

be or are not remedied within thirty (30) days, then [the plaintiff] may choose to terminate your lease and evict you. If [the plaintiff] chooses to proceed with lease termination, [the plaintiff] shall have a marshal serve you with a Notice to Quit that will tell you the date [the plaintiff] has terminated your lease and expects you to vacate the property. For purposes of counting your [thirty day] cure period, this [pretermination notice] shall be deemed received by you by June 16, 2022. Therefore, the [thirty day] period runs through and includes July 16, 2022.'' The defendant did not request to initiate the grievance process. Thereafter, on October 18, 2022, the plaintiff served the defendant with a notice to quit with a quit date of October 23, 2022. The defendant did not vacate the premises in accordance with the notice to quit.

The plaintiff commenced the present summary process action in December, 2022. On December 13, 2022, the defendant appeared as a self-represented party and filed a summary process answer to the complaint on Judicial Form JD-HM-5, titled "Summary Process (Eviction) Answer to Complaint." See Official Court Webforms, Form JD-HM-5, available at https://jud.ct.gov/webforms/forms/hm005.pdf (last visited October 3, 2024). In her answer, the defendant selected, inter alia, a special defense, which stated: "Additional reasons why I should not be evicted" and handwrote "I have lived on [the] premises for [thirteen years] and have complied with all rent payments and I am attempting to quit smoking." She also selected a second special defense: "The landlord accepted rent or otherwise waived the Notice to

use the tenant grievance procedures in one or more of the following ways: By leaving a message at 203-877-3223 ext. 15 no later than June 27, 2022; By mailing a written request to use the tenant grievance procedures to [the plaintiff's] management office at P.O. Box 291, Milford, CT 06460 postmarked no later than June 27, 2022; or By hand delivery of a written request to use the tenant grievance procedures to [the plaintiff] at 75 DeMaio Drive, Milford CT, and stamped received by [the plaintiff's] personnel no later than end of business on June 27, 2022. Your failure to make such a specific request

Quit after I received it." The defendant did not, in her answer, select as a special defense the statement: "I remedied the issue(s) listed in the pre-termination notice delivered to me under Connecticut law."

The matter was tried to the court, *Spader, J.*, on January 12, 2023. At trial, the plaintiff presented the testimony of its property manager, Robert Hughes, and offered into evidence (1) a photograph dated June 8, 2022, which depicted the defendant smoking within twenty-five feet of the building; (2) a smoking offense charge slip dated January 27, 2022; and (3) an April 28, 2020 letter advising the defendant that vaping constituted a violation of the no-smoking policy. Hughes testified that the plaintiff is a federally subsidized housing authority and requires all tenants to sign the no-smoking policy upon the renewal of their leases. Specifically, Hughes testified that the plaintiff "was probably the first in the state to have the . . . no-smoking policy. And later on [the United States Department of Housing and Urban Development] came up with their own [no-smoking] policy as well, which layers over [the plaintiff's]." Hughes also testified that the defendant repeatedly had violated the no-smoking policy, and provided as an example that, in January, 2022, he had issued the defendant a smoking offense charge slip for smoking inside of her apartment and subsequently issued her a $25 fine.[5]

The defendant testified that "I would walk to the tree where we would smoke and sometimes, yes, I would

---

in a timely fashion may result in a denial of the request. If a grievance hearing is held and is resolved against you, [the plaintiff] may commence an immediate action to recover possession of the premises. A Notice to Quit terminating your tenancy will precede any such action."

[5] Hughes also testified that a tenant living in a different PHA property also owned by the plaintiff has commenced an action with the Commissioner of Human Rights and Opportunities, alleging that the plaintiff has failed to enforce its no-smoking policy.

inadvertently light a cigarette. I have to be honest about that, but it was not done to be malicious or anything like that. It was just done mindlessly, to be honest with you." The defendant testified that she "messed up by walking in front of the building, in all honesty" and that she also had smoked in lawn chairs but believed that the chairs were located more than twenty-five feet from the building. The defendant further testified that she has attempted to quit smoking and had tried vaping as an alternative and that she did not recall receiving the smoking offense charge slip or paying a fine for the January, 2022 violation.

On February 21, 2023, the court issued its memorandum of decision. The court determined that "the plaintiff claimed multiple violations of the no-smoking policy as the basis of its claim of a lease violation. The evidence presented at trial, however, only established violations prior to the pretermination notice. The plaintiff's witness testified as to the first smoking offense ticket in January, 2022, and the 2020 vaping letter. The photo presented into evidence showed the outdoors smoking as time stamped by the plaintiff's surveillance camera as being taken June 8, 2022, a week prior to the letter. The plaintiff did not present evidence of violations after the sending of the letter. [Hughes] advised that he has received complaints about many tenants, not just [the defendant], and he does not have photos but is adamant that she has violated the [no-smoking policy]. While there may have been incidents and that is why the plaintiff proceeded with this case, none were testified to nor was evidence provided therefore.

"While the Appellate Court cases . . . seem to indicate that it is the defendant's obligation to raise her curing the lease violations as a special defense, understanding that the defendant is defending herself in a self-represented capacity, the court must still consider the evidence before it in making its decision. The defendant did not proactively claim that she did not further violate the [no-smoking] policy, only that she was trying

to quit smoking and attempting to comply with the [no-smoking] policy. To terminate the defendant's lease, however, the court must find that the defendant, by a fair preponderance of the evidence, did not cure lease violations. The evidence before the court only establishes an initial violation of the [no-smoking] policy but does not establish any violations after the pretermination notice. The court suspects that the defendant may have violated the [no-smoking] policy, but that suspicion is not supported by any evidence presented by the plaintiff.

"Accordingly, the court enters judgment for the defendant and reinstates the defendant's lease with the plaintiff. This is without prejudice for the plaintiff to start a new action with evidence of noncompliance with the lease following an additional pretermination notice." (Emphasis omitted.) This appeal followed.

The defendant, through counsel, filed a motion to dismiss this appeal on the basis that the trial court lacked subject matter jurisdiction over the plaintiff's action because the "[p]laintiff's federally required pretermination notice did not comply with the time frame established by 42 U.S.C. § 1437d (k) (2)[6] and

---

[6] Title 42 of the United States Code, § 1437d (k), titled "Administrative grievance procedure regulations: grounds of adverse action, hearing, examination of documents, representation, evidence, decision; judicial hearing; eviction and termination procedures," provides in relevant part:

"The Secretary shall by regulation require each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will—

"(1) be advised of the specific grounds of any proposed adverse public housing agency action;

"(2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (*l*);

"(3) have an opportunity to examine any documents or records or regulations related to the proposed action;

"(4) be entitled to be represented by another person of their choice at any hearing;

"(5) be entitled to ask questions of witnesses and have others make statements on their behalf; and

"(6) be entitled to receive a written decision by the public housing agency on the proposed action. . . ."

(*l*)[7] for the defendant public housing tenant to request an administrative grievance hearing to challenge the proposed termination of her lease." (Footnotes added.) On June 28, 2023, this court denied the defendant's motion to dismiss without prejudice to the parties addressing the jurisdictional issue raised by the defendant in their appellate briefs. Additional facts will be set forth as necessary.

I

As a preliminary matter, we address whether the trial court had subject matter jurisdiction over the plaintiff's summary process action. The defendant argues that the court lacked subject matter jurisdiction because the pretermination notice sent to her was inadequate in two respects. First, she argues that the pretermination notice was defective in that it failed to provide the proper time frame for her to initiate the grievance process. Second, she argues that it "fail[ed] to provide . . . sufficient factual information for [the defendant] to defend against the claimed violation of [the no-smoking policy]." We reject the defendant's claims that the pretermination notice was insufficient and, therefore, conclude that the court had subject matter jurisdiction over the summary process action.

The following legal principles are relevant to our resolution of this claim. "A motion to dismiss . . .

---

[7] Title 42 of the United States Code, § 1437d (*l*), provides in relevant part: "Each public housing agency shall utilize leases which . . .

"(4) require the public housing agency to give adequate written notice of termination of the lease which shall not be less than—

"(A) a reasonable period of time, but not to exceed 30 days—(i) if the health or safety of other tenants, public housing agency employees, or persons residing in the immediate vicinity of the premises is threatened; or (ii) in the event of any drug-related or violent criminal activity or any felony conviction;

"(B) 14 days in the case of nonpayment of rent; and

"(C) 30 days in any other case, except that if a State or local law provides for a shorter period of time, such shorter period shall apply . . . ."

properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Gibson* v. *Jefferson Woods Community, Inc.*, 206 Conn. App. 303, 306, 260 A.3d 1244, cert. denied, 339 Conn. 911, 261 A.3d 747 (2021). A claim that a court lacks subject matter jurisdiction may be raised at any time during the proceedings, including on appeal. See, e.g., *Mention* v. *Kensington Square Apartments*, 214 Conn. App. 720, 727, 280 A.3d 1195 (2022). Thus, a challenge to a court's subject matter jurisdiction is a threshold matter that we must resolve prior to addressing the claims on appeal. See *Housing Authority* v. *Martin*, 95 Conn. App. 802, 808, 898 A.2d 245, cert. denied, 280 Conn. 904, 907 A.2d 90 (2006).

"There is no doubt that the Superior Court is authorized to hear summary process cases; the Superior Court is authorized to hear all cases except those over which the probate courts have original jurisdiction. General Statutes § 51-164s. The jurisdiction of the Superior Court in summary process actions, however, is subject to [certain] condition[s] precedent. . . . [B]efore a landlord may pursue its statutory remedy of summary process . . . the landlord must prove its compliance with all the applicable preconditions set by state and federal law for the termination of a lease." (Citation omitted; internal quotation marks omitted.) *Presidential Village, LLC* v. *Perkins*, 332 Conn. 45, 56, 209 A.3d 616 (2019). "When a defendant is a tenant of federally subsidized housing, federal law must be followed in addition to state law. . . . Under federal law, 42 U.S.C. § 1437d (*l*) and 24 C.F.R. § 966.4 (*l*) (3),[8] a landlord is

---

[8] Title 24 of the 2021 edition of the Code of Federal Regulations, § 966.4, provides in relevant part: "A lease shall be entered into between the PHA and each tenant of a dwelling unit which shall contain the provisions described

required to issue a pretermination notice before commencing a summary process action.'' (Citation omitted; footnote added.) *Housing Authority* v. *Martin*, supra, 95 Conn. App. 808.

A

We begin with the defendant's argument that the pretermination notice was jurisdictionally defective because it failed to provide her with the legally required amount of time to invoke the grievance process. The defendant argues that 42 U.S.C. § 1437d (k) (2) and (*l*) clearly and unambiguously required that she be given thirty days to start the grievance process. Thus, according to the defendant, because the pretermination notice that she received notified her that she had ten days to do so, it was legally insufficient. The plaintiff argues that 42 U.S.C. § 1437d (k) (2) and (*l*) do not apply to the initiation of the grievance process and that it provided the defendant with a pretermination notice that complied with federal law because it informed the defendant that she had a reasonable period of time, ten days, to invoke the grievance process. We reject the defendant's claim that the pretermination notice was jurisdictionally defective.[9]

hereinafter. . . . (*l*) Termination of tenancy and eviction . . . (3) Lease termination notice. (i) The PHA must give written notice of lease termination of: (A) 14 days in the case of failure to pay rent; (B) A reasonable period of time considering the seriousness of the situation (but not to exceed 30 days): (1) If the health or safety of other residents, PHA employees, or persons residing in the immediate vicinity of the premises is threatened; or (2) If any member of the household has engaged in any drug-related criminal activity or violent criminal activity; or (3) If any member of the household has been convicted of a felony; (C) 30 days in any other case, except that if a State or local law allows a shorter notice period, such shorter period shall apply. . . .''

[9] The defendant does not argue on appeal that the court lacked subject matter jurisdiction on the basis that the pretermination notice did not comply with state law. Accordingly, our analysis in this subsection is limited to whether the pretermination notice complied with federal law.

The defendant's argument rests on 42 U.S.C. § 1437d (k), which provides in relevant part: "The Secretary [of Housing and Urban Development] shall by regulation require each [PHA] receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will—(1) be advised of the specific grounds of any proposed adverse public housing agency action; (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (*l*); (3) have an opportunity to examine any documents or records or regulations related to the proposed action; (4) be entitled to be represented by another person of their choice at any hearing; (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and (6) be entitled to receive a written decision by the public housing agency on the proposed action. . . ." In other words, § 1437d (k) instructs the Secretary of Housing and Urban Development to develop regulations setting forth the requirements, standards and criteria for grievance procedures established and implemented by PHAs.

Title 42 of the United States Code, § 1437d (*l*), in turn, provides in relevant part: "Each public housing agency shall utilize leases which . . . (4) require the public housing agency to give adequate written notice of termination of the lease which shall not be less than (A) a reasonable period of time, but not to exceed 30 days—(i) if the health or safety of other tenants, public housing agency employees, or persons residing in the immediate vicinity of the premises is threatened . . . and (C) 30 days in any other case, except that if a State or local law provides for a shorter period of time, such shorter period shall apply . . . ."

We now turn to the defendant's specific claim on appeal: that the plaintiff's pretermination notice is jurisdictionally defective in that it provides her with a ten

day period to invoke the grievance process rather than the thirty day period to which she claims she is entitled pursuant to 42 U.S.C. § 1437d (k) (2) and (*l*).[10] The defendant's claim rests on a flawed premise. Section 1437d (k) does not mandate that the amount of time afforded a tenant to invoke the grievance process must be identified in the pretermination notice. Rather, it sets forth the substantive requirements of what processes must be afforded to the tenant before eviction.

In support of her construction, the defendant relies on *Housing Authority* v. *Love*, 375 Ill. App. 3d 508, 509–10, 874 N.E.2d 893 (2007), in which the Appellate Court of Illinois considered whether a PHA's grievance procedure, which required that any grievance be made within ten days after the grievable event, violated 42 U.S.C. § 1437d (k) (2). In that case, the PHA "served upon [the tenant] a 30-day notice of termination of the lease" on September 13, 2006, and the tenant "hand-delivered a grievance to [the PHA], contesting the termination of the lease" on September 27, 2006. Id., 509. Because "the deadline for submitting a grievance was September 23, 2006," the PHA considered the grievance untimely and never responded to it. Id. In the ensuing eviction action, the tenant moved for judgment in her favor "on the ground that [the PHA] had failed to provide her the grievance procedure required by federal law. [The tenant] argued that under the applicable federal statute, her grievance was timely because she submitted it within the 30-day period in the notice of termination. See 42 U.S.C. §§ 1437d (k) (2), (*l*) (4) (C) (2000). The [trial] court disagreed with [the tenant's] interpretation of the statute and held the grievance to be untimely because [she] had failed to submit it within 10 days,

---

[10] In resolving the defendant's claim, our inquiry is limited to whether the *pretermination notice* is jurisdictionally defective in this respect. The question of whether the *grievance* procedure, as established and implemented by the plaintiff, complies with federal law is not before this court.

the deadline to which the parties agreed in the lease." Id., 509–10.

The tenant appealed from the judgment for the PHA; id., 510; "arguing that [the PHA] failed to provide her the grievance procedure required by federal statutory law." Id., 509. The Illinois Appellate Court agreed with the tenant, concluding that, because she submitted her grievance within thirty days after receiving the termination notice, it was timely. Id., 512. Accordingly, the court held that the tenant had invoked the grievance proceeding notwithstanding the ten day limitation provided for in the parties' lease. Id.

In the present case, however, the defendant never sought to invoke the grievance process. Moreover, on appeal, she does not claim that that the plaintiff's procedure violates the federal statute by failing to afford her "an opportunity for a hearing before an impartial party upon timely request within" thirty days.[11] Instead, she claims that, "[b]ecause . . . [the plaintiff's] pretermination notice failed to provide the proper time frame for [her] to initiate [the plaintiff's] administrative grievance process," the court lacked subject matter jurisdiction. Given the differences between the claim raised by the defendant in the present case and the claim addressed by the court in *Love*, her reliance on that case is misplaced. The court in *Love* considered whether the grievance procedure itself denied the tenant "an opportunity for a hearing before an impartial party upon timely request," and not whether 42 U.S.C. § 1437d (k) (2) required that the pretermination notice specify the time frame for invoking the grievance process. Accordingly, *Love* is distinguishable from the present case.

---

[11] We note that, although the parties' lease reflects that the plaintiff provided the defendant with a copy of its "Grievance Policy and Procedure," that document does not appear in the record.

Furthermore, the statutory time requirement set forth in 42 U.S.C. § 1437d (k) (2) and (*l*), on which the defendant relies, applies to the period of time within which the defendant must have an opportunity for a hearing before an impartial party—not to the time for initiation of the grievance process. As the defendant acknowledges in her appellate brief, such a hearing only occurs if the issue leading to the pretermination notice is not resolved earlier in the grievance process during informal negotiations. Significantly, although § 1437d (k) provides a number of rights a tenant has in connection with such a formal hearing, it does not require that any of those rights be included in the pretermination notice.

The required contents of the pretermination notice are instead established by the regulations. Title 24 of the 2021 edition of the Code of Federal Regulations, § 247.4 (a), provides: "The landlord's determination to terminate the tenancy shall be in writing and shall: (1) State that the tenancy is terminated on a date specified therein; (2) state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense; (3) advise the tenant that if he or she remains in the leased unit on the date specified for termination, the landlord may seek to enforce the termination only by bringing a judicial action, at which time the tenant may present a defense; and (4) be served on the tenant in the manner prescribed by paragraph (b) of this section." Nothing therein requires the pretermination notice to identify timelines related to initiating the grievance procedure.

Additionally, 24 C.F.R. § 966.4 (*l*) (3) (ii) provides that "[t]he notice of lease termination to the tenant shall state specific grounds for termination, and shall inform the tenant of the tenant's right to make such reply as the tenant may wish. The notice shall also inform the tenant of the right (pursuant to § 966.4 (m)) to examine PHA documents directly relevant to the

termination or eviction. When the PHA is required to afford the tenant the opportunity for a grievance hearing, the notice shall also inform the tenant of the tenant's right to request a hearing in accordance with the PHA's grievance procedure."[12]

Although the regulations require that the pretermination notice inform the tenant of the right to request a hearing in accordance with the PHA's grievance procedure, they do not require that the notice specify the time frame for invoking the grievance process. In the present case, the defendant does not claim that she was unaware of the plaintiff's grievance procedure, that the procedure did not comply with federal law, or that she was unaware of her right to request a hearing before an impartial party. Instead, her argument is focused on a purported deficiency in the pretermination notice based on a requirement that does not exist. Accordingly, we reject the defendant's jurisdictional argument.

B

The defendant also raises, for the first time in her appellate brief, an argument that the plaintiff "fail[ed] to provide a pretermination notice with sufficient factual information for [the defendant] to defend against the claimed violation of [the policy, which] deprived the trial court of subject matter jurisdiction over [the plaintiff's] action." The defendant cites to 42 U.S.C. § 1437d (k) and (*l*) and General Statutes § 47a-15 for the proposition that the plaintiff was required to serve the defendant with "a valid pretermination notice informing [her] of the basis for the proposed termination of her lease . . . ." The plaintiff responds that the pretermination

---

[12] The defendant does not claim that the pretermination notice was inadequate because it did not expressly tell her that she had the right to request a hearing as opposed to referring the defendant to the grievance procedure, which she acknowledged receiving when she renewed her lease in 2021. See footnote 11 of this opinion.

notice it provided to the defendant contained "sufficient information to enable [her] to remedy or cure the violation . . . ." We agree with the plaintiff.

Although the defendant raises this argument for the first time in her appellate brief, we nevertheless address it on appeal. See *Mention* v. *Kensington Square Apartments*, supra, 214 Conn. App. 727 (claim that court lacks subject matter jurisdiction can be raised at any time during proceedings, including on appeal). The following legal principles are, thus, necessary for our resolution of this claim. With respect to federal law, "[s]ervice of a valid pretermination notice is a condition precedent to a summary process action. See [24 C.F.R.] § 247.4 [2018].[13] In any subsequent summary process action, the landlord can rely only on grounds that were set forth in that notice, unless the landlord had no knowledge of an additional ground at the time the pretermination notice was served. . . . With respect to the statement of such grounds in the pretermination notice, the regulations mandate that the notice must, among other things, state the reasons for the landlord's action with *enough specificity so as to enable the tenant to prepare a defense* . . . ." (Citation omitted; emphasis in original; footnote altered; internal quotation marks omitted.) *Presidential Village, LLC* v. *Perkins*, supra, 332 Conn. 57.

In Connecticut, "[s]ummary process is a statutory remedy which enables the landlord to recover possession from the tenant upon the termination of a lease.

---

[13] "Title 24 of the 2018 edition of the Code of Federal Regulations, § 247.4 (a), provides: 'The landlord's determination to terminate the tenancy shall be in writing and shall: (1) State that the tenancy is terminated on a date specified therein; (2) state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense; (3) advise the tenant that if he or she remains in the leased unit on the date specified for termination, the landlord may seek to enforce the termination only by bringing a judicial action, at which time the tenant may present a defense; and (4) be served on the tenant in the manner prescribed by paragraph (b) of this section.' " *Presidential Village, LLC* v. *Perkins*, supra, 332 Conn. 57 n.12.

. . . Pursuant to § 47a-15, before a landlord may proceed with a summary process action, except in those situations specifically excluded, the landlord must first deliver a [pretermination] notice to the tenant specifying the alleged violations and offer the tenant a . . . period to remedy. . . . The legislative purpose [of a pretermination or *Kapa*[14] notice] is to discourage summary evictions against first offenders . . . . Section 47a-15 is separate from and preliminary to the maintenance of a summary process action pursuant to . . . [General Statutes] § 47a-23. . . . The Superior Court has jurisdiction to hear a summary process action only if the landlord has previously served the tenant with a notice to quit pursuant to § 47a-23. . . .

"The text of § 47a-15 is clear and unambiguous: Prior to the commencement of a summary process action . . . the landlord shall deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. . . . [I]f substantially the same act or omission for which notice was given recurs within six months, the landlord may terminate the rental agreement in accordance with the provisions of [§§] 47a-23 to 47a-23b, inclusive." (Citations omitted; footnote added; internal quotation marks omitted.) *Housing Authority* v. *Rodriguez*, 178 Conn. App. 120, 126–27, 174 A.3d 844 (2017). "In order to demonstrate its compliance with the notices required for a proper termination, a landlord must show that the notices given to the tenant apprised her of the information a tenant needs to protect herself against premature, discriminatory or arbitrary eviction." *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 143, 520 A.2d 173 (1987).

In the present case, the defendant maintains that the plaintiff provided her with an invalid pretermination

[14] *Kapa Associates* v. *Flores*, 35 Conn. Supp. 274, 278, 408 A.2d 22 (1979).

notice that "failed to specify where [the defendant] smoked and did not indicate when the alleged violation took place." In support of her argument, the defendant relies on a footnote in *Presidential Village, LLC* v. *Perkins*, supra, 332 Conn. 54 n.10, that states: "[I]f the lack of specificity in a notice discourages the tenant from taking steps to cure the default, it also could impair the tenant's ability to establish an equitable defense to eviction." The pretermination notice in the present case, however, provided the defendant with the information necessary for her to defend herself against possible eviction. Specifically, it identified the lease provision that the defendant violated, stated that she had smoked within twenty-five feet of the building, and included a copy of the no-smoking policy. Moreover, the pretermination notice included a cure provision that informed the defendant that she had thirty days to remedy the violation. We cannot conclude that the information provided by the plaintiff to the defendant "discourages [her] from taking steps to cure the default" or "impair[s] [her] ability to establish an equitable defense to eviction." Id. Accordingly, the pretermination notice complied with federal and state law, and the court, therefore, had subject matter jurisdiction over this matter.

## II

Having concluded that the court had subject matter jurisdiction over this summary process action, we now turn to the plaintiff's claims on appeal. The plaintiff claims that the court (1) improperly rendered judgment for the defendant because she did not assert as a special defense that she cured the no-smoking policy violation, and (2) applied an incorrect legal standard to find that the plaintiff did not prove that the defendant had not cured her violation of the no-smoking policy.[15] We address each claim in turn.

---

[15] The plaintiff also claims that the defendant could not cure her most recent violation of the no-smoking policy because she had violated it on several occasions. Because we agree with the plaintiff on its claims regarding

## A

The plaintiff first claims that the court improperly rendered judgment for the defendant because she did not assert as a special defense that she cured the violation of the no-smoking policy. The defendant responds that she pleaded the special defense of cure because her "answer can easily be construed as pleading the equitable doctrine against forfeiture as a special defense which incorporates cure as one of its elements." We agree with the plaintiff.

Our resolution of this claim "requires us to interpret the defendant's pro se answer. As a consequence, the issue before the court invokes our plenary power to review the legal effect of pleadings." *Vanguard Engineering, Inc.* v. *Anderson*, 83 Conn. App. 62, 65, 848 A.2d 545 (2004). "A defendant's failure to plead a special defense precludes the admission of evidence on the subject. . . . Although our courts are consistently . . . solicitous of the rights of pro se litigants, the rules of practice cannot be ignored to the detriment of other parties. . . . It would be fundamentally unfair to allow any defendant to await the time of trial to introduce an unpleaded defense. Such conduct would result in trial by ambuscade to the detriment of the opposing party." (Citations omitted; internal quotation marks omitted.) *Oakland Heights Mobile Park, Inc.* v. *Simon*, 36 Conn. App. 432, 436–37, 651 A.2d 281 (1994). In a summary process action, "[i]f a tenant claims that a breach can be and has been remedied and is no longer continuing, the tenant should state those claims in a special defense to the summary process action."[16] *Housing Authority* v. *Martin*, supra, 95 Conn. App. 814.

the court's consideration of an unpleaded special defense, we need not address this additional claim.

[16] "This is consistent with Practice Book § 10-50, which provides in relevant part: 'No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the

The defendant did not plead in her answer that she cured the violation within the thirty days prescribed in the pretermination notice. Although we are cognizant that the defendant was self-represented at this time, she filed her answer on Judicial Form JD-HM-5, titled "Summary Process (Eviction) Answer to Complaint," which provides express instructions on how to complete that form. See Official Court Webforms, Form JD-HM-5, available at https://jud.ct.gov/webforms/forms/hm005.pdf (last visited October 3, 2024). Section 2 of the form is dedicated to special defenses and provides a defendant with a number of special defenses, each of which has a box that a defendant can select to indicate that they are asserting that specific defense. Moreover, the form includes a definition of the term "special defenses" that reads: "Facts showing the court that the plaintiff has no legal right to evict you." Included in section 2 in the list of special defenses is the statement: "I remedied the issue(s) listed in the pre-termination notice delivered to me under Connecticut law." The defendant did not select that special defense and, instead, selected the box immediately underneath it, which is accompanied by the special defense: "Additional reasons why I should not be evicted . . . ." The defendant handwrote as an additional reason that she is "attempting to quit smoking." She, therefore, did not plead that she cured the violation.[17]

plaintiff has no cause of action, must be specially alleged. . . .' " *Housing Authority* v. *Martin*, supra, 95 Conn. App. 814 n.8.

[17] In her appellate brief, the defendant argues that "[t]he language in [her] [a]nswer can easily be construed as pleading the equitable doctrine against forfeiture as a special defense which incorporates cure as one of its elements." In light of our conclusion that the court erred in rendering judgment on the unpleaded special defense of cure, we recognize that the court did not consider her special defense "I have lived on the premises for [thirteen years] and I have complied with all rent payments and I am attempting to quit smoking." We express no opinion as to the construction of this special defense were it to be pursued on remand.

Having determined that the defendant did not plead the special defense of cure, we must next determine whether the court improperly rendered judgment on that basis. The court correctly acknowledged in its memorandum of decision that "[t]he defendant did not proactively claim that she did not further violate the policy, only that she was trying to quit smoking and attempting to comply with the policy." The court nevertheless determined that the evidence before it "only establishes an initial violation of the policy but does not establish any violations after the pretermination notice." Accordingly, the court improperly relied on an unpleaded special defense as a basis for rendering judgment in the defendant's favor. See *Howard-Arnold, Inc.* v. *T.N.T. Realty, Inc.*, 145 Conn. App. 696, 712, 77 A.3d 165 (2013) ("it is improper for a court, sua sponte, to apply an unpleaded special defense to defeat a plaintiff's cause of action"), aff'd, 315 Conn. 596, 109 A.3d 473 (2015); *Oakland Heights Mobile Park, Inc.* v. *Simon*, supra, 36 Conn. App. 436–37 (allowing evidence of unpleaded special defense "result[s] in 'trial by ambuscade' to the detriment of the opposing party").

We, therefore, conclude that, because the defendant did not plead as a special defense that she cured the violation, the court improperly considered it as a basis for rendering judgment in the defendant's favor.

B

The plaintiff next claims that the court applied an incorrect legal standard to find that the plaintiff did not prove that the defendant had not cured her violation of the no-smoking policy. Specifically, the plaintiff argues that "[t]he trial court . . . was not empowered to excuse [the] defendant from raising any special defense available to her or from attempting to credibly prove such defense at trial. In doing so [the court] erroneously placed the burden on the plaintiff to prove otherwise."

The defendant responds that the lack of evidence presented at trial to suggest that she continued violating the no-smoking policy supports the court's judgment in her favor. We agree with the plaintiff.

The following legal principles are relevant to our resolution of this claim. "The plenary standard of review applies to the preliminary issue of whether the court applied the correct legal standard in evaluating [a defendant's] special defense." *Boccanfuso* v. *Daghoghi*, 193 Conn. App. 137, 150, 219 A.3d 400 (2019), aff'd, 337 Conn. 228, 253 A.3d 1 (2020). "The burden of establishing an equitable defense in a summary process action falls on the party asserting that defense." Id., 151.

As set forth in part II A of this opinion, the defendant did not plead as a special defense that she cured the violation. Assuming, arguendo, that the defendant had pleaded as a special defense that she cured the violation, the court nevertheless improperly placed the burden of proof on the plaintiff by requiring the plaintiff to prove that a subsequent violation of the no-smoking policy had occurred after it issued the pretermination notice. The court's memorandum of decision provides that "the plaintiff claimed multiple violations of the no-smoking policy as the basis of its claim of a lease violation. The evidence presented at trial, however, only established violations prior to the pretermination notice. . . . The *plaintiff* did not present evidence of violations after the sending of the letter." (Emphasis added.) This statement is an improper application of our jurisprudence on special defenses. Had the defendant raised as a special defense that she cured the violation, then she, and not the plaintiff, would have borne the burden of proving that defense. See *O & G Industries, Inc.* v. *American Home Assurance Co.*, 204 Conn. App. 614, 625, 254 A.3d 955 (2021) ("defendant must prove the allegations in its special defenses by a fair preponderance of the evidence in a civil trial"). Accordingly,

we conclude that the court applied the incorrect legal standard by improperly placing the burden of proof on the plaintiff with respect to the defendant's unpleaded special defense.

In light of our determinations in part II A and B of this opinion, we conclude that the court improperly rendered judgment in favor of the defendant on the basis of an unpleaded special defense that the court concluded the plaintiff failed to disprove. Consequently, the court never considered the defendant's special defenses as they were pleaded on her summary process answer form.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.