******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

GATEWAY DEVELOPMENT/EAST LYME, LLC
*v.* ANH DUONG ET AL.
(AC 46505)

Suarez, Clark and Vertefeuille, Js.

*Syllabus*

The plaintiff subleased certain real property to the defendants. After the defendants failed to make a rent payment, the plaintiff sent the defendants a notice of cancellation of the lease and served them with a notice to quit possession on the ground of nonpayment of rent. When the defendants did not quit possession, the plaintiff served the defendants with a summary process summons and complaint. The sublease agreement contained a clause providing that the agreement could not be modified in any manner except by an instrument in writing executed by the parties. At trial, the plaintiff presented testimony from the plaintiff's lease administrator, who testified that the defendants' rental payments were habitually late, that she typically sent the defendants a notice of default with a ten day right to cure such default, and that she would routinely accept the late payments that followed but that she had lost patience with the defendants. The court found that the defendants had breached the sublease agreement by nonpayment of rent, rejected the defendants' argument that the sublease agreement required the plaintiff to provide the defendants with a pretermination notice and a ten day right to cure, and rendered a judgment of possession for the plaintiff. On the defendants' appeal to this court, *held*:

1. The defendants could not prevail on their claim that the trial court should have considered evidence of the parties' course of performance in its interpretation of the sublease agreement and improperly concluded that the language of the lease controlled; the plain and unambiguous language of the sublease agreement made clear that a pretermination notice and a ten day cure period were not required in the context of a default for nonpayment of rent and that such notice applied only to other specified events of default.

2. The defendants could not prevail on their claim that the parties' course of performance modified the terms of the sublease agreement; the trial court properly relied on the written terms of the sublease agreement to conclude that the plaintiff was not required to provide the defendants with a pretermination notice and an opportunity to cure their default for nonpayment of rent, as any modification of the agreement by the parties' course of performance was barred by the contractual provision requiring that modifications be in writing.

Argued May 13—officially released July 30, 2024

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of New London, where the defendants filed a counterclaim; thereafter, the matter was tried to the court, *Graff, J.*; subsequently, the defendants withdrew their counterclaim; judgment for the plaintiff, from which the defendants appealed to this court. *Affirmed.*

*Keith Yagaloff*, for the appellants (defendants).

*Alexa Massad Powers*, with whom, on the brief, was *Jason B. Burdick*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. In this summary process action, the plaintiff, Gateway Development/East Lyme, LLC, leased property located at 295 Flanders Road in East Lyme (premises) and subleased the premises to the defendants, Anh Duong doing business as Daddy's Noodle Bar and Daddy's Noodle Bar 2, LLC. The defendants appeal from the trial court's judgment of possession rendered in favor of the plaintiff. It is undisputed that the defendants failed to pay rent in a timely manner. On appeal, the defendants claim that the court improperly concluded that the plaintiff was not required to provide them with a pretermination notice and an opportunity to cure their default for nonpayment of rent within ten days of such notice. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following facts and procedural history that are relevant to our resolution of the defendants' appeal. The plaintiff subleased the premises to the defendants beginning in January, 2019.[1] The defendants occupied the premises and agreed to pay $6829.54

---

[1] The plaintiff initially subleased the premises only to the defendant Anh Duong doing business as Daddy's Noodle Bar pursuant to a sublease agreement dated January 9, 2019. On September 12, 2022, in a second amendment to the sublease agreement, the parties agreed that the defendant Daddy's Noodle Bar 2, LLC, would become a cosublessee that was jointly and severally liable for the obligations imposed under the sublease agreement.

per month for rent, due on the first day of each month. The defendants failed to pay the rent due on November 1, 2022. On November 11, 2022, the plaintiff sent the defendants a notice of cancellation of the lease, and, on November 14, 2022, the plaintiff served the defendants with a notice to quit possession on the ground of nonpayment of rent.

Although the notice to quit instructed the defendants to vacate the property by November 22, 2022, the defendants did not quit possession. The plaintiff served the defendants with a summary process summons and complaint on November 28, 2022, seeking immediate possession of the premises. In response, the defendants filed an answer and special defenses to the plaintiff's complaint, asserting, inter alia, that the plaintiff's notice to quit was defective and that they had lawfully tendered rent.[2] Specifically, the defendants argued that the sublease agreement required the plaintiff to afford them a ten day notice to cure their default before serving them with a notice to quit. The defendants further argued that the plaintiff improperly refused to accept a payment of rent that they had tendered on November 16, 2022, which they contended would have been within the ten day cure period.

The defendants specifically relied on paragraph 21 of the sublease agreement, which provides in relevant part: "Any of the following occurrences shall constitute a default under this Sublease . . . Failure of Sublessee to pay any installment of rent, reimbursements, or any other charge within ten (10) days after the same is due and payable . . . Any breach by Sublessee to observe or perform any of its other obligations under this Sublease, which shall continue for ten (10) days after notice in writing to Sublessee of such default, and in connection with which Sublessee shall not have in good faith

---

[2] The defendants also filed a counterclaim, which subsequently was marked "off" by agreement of the parties and is not at issue in this appeal.

commenced performance if full performance cannot be reasonably had within the ten (10) day period . . . .

"In the event Sublessee shall fail to pay its rent within ten (10) days after the same shall be due and payable, Sublessor shall have the right, without prior notice to the Sublessee, to immediately initiate any and all legal action to recover possession of the Premises, and to terminate this Sublease in the manner provided by law relating to summary process. Such right shall be in addition to any other rights to which Sublessor is entitled by law or by the other terms of this Sublease.

"Upon the occurrence of any one or more of such events, and upon Sublessor serving a written ten (10) days notice of cancellation of this Sublease upon Sublessee and upon the expiration of such ten (10) days, this Sublease and the terms thereunder shall end and expire as fully and completely as if the date of expiration of such ten (10) day period herein definitely fixed for the end and expiration of this Sublease and Sublessee shall then quit and surrender the Premises to Sublessor, but Sublessee shall remain liable as hereinafter provided. . . ."

In their pretrial brief, the defendants argued that, in addition to the language of the agreement, "[t]he course of performance by the parties demonstrated that [paragraph] 21 required notice and a ten day cure period, including for nonpayment of rent."

A bench trial was held on April 5, 2023. Copies of the sublease agreement and subsequent amendments to that agreement were admitted into evidence. In addition, the plaintiff presented testimony from Mara Henderson King, who worked as the plaintiff's lease administrator. King testified, in relevant part, that the defendants' rental payments were "habitually late" and they had paid rent within the first ten days of the month on only eight occasions since the inception of the lease

in January, 2019. She also testified that she typically sent the defendants a "notice of default" with a ten day right to cure such default, and she would routinely accept the late payments that followed. She explained that the plaintiff would "try to be as accommodating to [its] tenants as possible," which is why she typically provided a notice of default with a cure period, regardless of whether it was required under the lease. When the defendants failed to pay their November, 2022 rent in a timely fashion, King sent the notice of cancellation and issued the notice to quit, rather than providing a notice of default with a cure period, because "[p]atience ha[d] been worn way too thin." King further testified as to her understanding of what was required under the terms of the lease. Specifically, she testified that, pursuant to paragraph 21 of the sublease agreement,[3] a pretermination notice was not required when the claimed default was the nonpayment of rent. Instead, a notice of default with a ten day cure period was required with respect to the other events of default listed in the lease.[4]

The defendants presented testimony from Peter Tran, who had a personal relationship with Duong. Tran handled communications with King about the lease on behalf of Duong. Tran testified that the plaintiff accepted many late rental payments from the defendants after providing them with a ten day period to cure their default and, on the basis of the notices of default they previously had received, he believed the defendants had a right to cure under the terms of the lease. The defendants also submitted documentary evidence to the court, including two letters sent from King to Duong dated May 11, 2020, and October 31, 2022.

---

[3] The language of paragraph 21 of the sublease agreement is set forth previously in this opinion.

[4] Subsections (a) through (f) of paragraph 21 of the sublease agreement list various events that constitute defaults under the lease.

The letters provided the defendants with notice of certain prior defaults, including the nonpayment of rent and multiple bounced checks, and gave the defendants ten days to cure such defaults.

At the conclusion of trial, the defendants' counsel argued that the foregoing evidence reflected the parties' course of performance[5] and that such evidence could be used in two ways: (1) it could serve as evidence of the intent of the parties in the court's interpretation of the sublease agreement, and (2) it could demonstrate a modification of the sublease agreement.

In an order dated April 12, 2023, the court, *Graff, J.*, found that the defendants had breached the sublease agreement by nonpayment of rent and rejected the defendants' argument that the sublease agreement required the plaintiff to provide the defendants with a pretermination notice and a ten day right to cure. The court explained: "It is clear that the terms of the lease in the aforementioned paragraph 21 do not require a ten day notice to cure period for the failure to pay rent. While there is a notice to cure provision, this provision does not apply to the failure to pay rent. The lease permits that when there is a failure to pay rent, the landlord may take possession of the premises as well as take advantage of other legal remedies available.

"A landlord cannot commence an eviction without first complying with the notice and compliance provisions of a lease. . . . Here, the terms of the lease do not require a ten day notice to cure period. Moreover, the court finds that the notice to quit which is dated November 29, 2022, is sufficient. . . . The plaintiff has

---

[5] The defendants have used the terms "course of performance" and "course of conduct" interchangeably both before the trial court and on appeal. For purposes of consistency, we use the term "course of performance" throughout this opinion.

met its burden of showing that there has been nonpayment of rent in violation of the lease terms." (Citations omitted.) Accordingly, the court rendered a judgment of possession in favor of the plaintiff. This appeal followed.

On appeal, the defendants claim that the court improperly concluded that the plaintiff was not required to provide them with a pretermination notice and a ten day cure period prior to serving them with a notice to quit. Specifically, the defendants contend that the court incorrectly limited its analysis to the terms of the parties' sublease agreement and that it should have considered evidence of the parties' course of performance (1) as evidence of the parties' understanding or intended interpretation of the agreement, or (2) to find that the parties had modified the terms of their agreement through that course of performance.

As an initial matter, we note that the court did not make any specific factual findings regarding whether the defendants had established a course of performance between the parties, and it did not explicitly address the defendants' arguments related to the parties' alleged course of performance.[6] Nevertheless, in reaching its conclusion, the court necessarily rejected the defendants' arguments concerning course of performance;

[6] To the extent that the defendants contend that the court entirely failed to consider their arguments regarding the parties' course of performance, we disagree. We do not presume error on the part of the trial court. See *United Cleaning & Restoration, LLC* v. *Bank of America, N.A.*, 225 Conn. App. 702, 713 n.7,     A.3d     (2024). In addition, at a hearing held on May 2, 2023, to address the defendants' counterclaim; see footnote 2 of this opinion; the court confirmed that it had considered the defendants' argument regarding the parties' course of performance. Specifically, the defendants' counsel told the court: "The only thing I was going to ask, Your Honor. . . . I think I know the answer, but I just wanted to make sure that the course of performance issues that were addressed in the hearing—the original hearing—were addressed by Your Honor when you made your decision on the merits of the motion. And I believe you did, Your Honor." The court responded: "Yes."

see *Russo* v. *Thornton*, 217 Conn. App. 553, 567 n.18, 290 A.3d 387 (court "necessarily rejected" argument that it did not explicitly address), cert. denied, 346 Conn. 921, 291 A.3d 608 (2023); *T & M Building Co.* v. *Hastings*, 194 Conn. App. 532, 545–46, 221 A.3d 857 (2019) (same), cert. denied, 334 Conn. 926, 224 A.3d 162 (2020); and "we will presume, in the absence of an articulation, [that the] trial court acted correctly, meaning that it undertook a proper analysis of the law and made whatever findings of the facts were necessary." (Emphasis omitted.) *Zaniewski* v. *Zaniewski*, 190 Conn. App. 386, 396, 210 A.3d 620 (2019). With these principles in mind, we turn to the defendants' claims.

I

First, the defendants contend that the court improperly relied solely on the language of the parties' sublease agreement and failed to consider the evidence of the parties' course of performance in its interpretation of the agreement. Specifically, the defendants argue that paragraph 21 of the sublease agreement was ambiguous as to whether a pretermination notice and a ten day cure period was required in the context of a default for nonpayment of rent and, therefore, the court should have considered the parties' course of performance as evidence of the parties' understanding of the terms of the lease. We are not persuaded.

We begin our analysis with the applicable standard of review. The defendants' claim "presents a question of contract interpretation because a lease is a contract, and, therefore, it is subject to the same rules of construction as other contracts. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is

plenary].” (Internal quotation marks omitted.) *Carroll* v. *Yankwitt*, 203 Conn. App. 449, 487, 250 A.3d 696 (2021).

“The intent of the parties as expressed in [writing] is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing].” (Internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 623, 987 A.2d 1009 (2010).

“Where the language of the [writing] is clear and unambiguous, the [writing] is to be given effect according to its terms.” (Internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *50 Morgan Hospitality Group, LLC*, 211 Conn. App. 724, 731, 273 A.3d 726 (2022); see also *Bellini* v. *Patterson Oil Co.*, 156 Conn. App. 158, 163, 111 A.3d 987 (2015) (“[w]hen only one interpretation of a contract is possible, the court need not look outside the four corners of the contract” (internal quotation marks omitted)). “If, however, the contractual language is found to be ambiguous, [s]uch ambiguity permits the trial court’s consideration of extrinsic evidence as to the conduct of the parties.” (Internal quotation marks omitted.) *Heyman Associates No. 5, L.P.* v. *FelCor TRS Guarantor, L.P.*, 153 Conn. App. 387, 403, 102 A.3d 87, cert. denied, 315 Conn. 901, 104 A.3d 106 (2014).

An agreement is ambiguous “[w]here the language of [that] agreement is susceptible to more than one reasonable interpretation . . . .” (Internal quotation marks omitted.) *Cody Real Estate, LLC* v. *G & H Catering, Inc.*, 219 Conn. App. 773, 784, 296 A.3d 214, cert.

denied, 348 Conn. 910, 303 A.3d 11 (2023). "The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Internal quotation marks omitted.) *Heyman Associates No. 5, L.P.* v. *FelCor TRS Guarantor, L.P.*, supra, 153 Conn. App. 403–404.

In the present case, we conclude that the plain and unambiguous language of paragraph 21 of the sublease agreement makes clear that a pretermination notice and a ten day cure period were not required in the context of a default for nonpayment of rent. Paragraph 21 specifically provides that, if the defendants fail to pay rent within ten days after it is due, the plaintiff may "immediately initiate" legal action to recover possession of the premises, "without prior notice" to the defendants.

Although paragraph 21 proceeds to require the plaintiff to serve a "written ten (10) days notice of cancellation" before serving the defendants with a notice to quit "[u]pon the occurrence of any one or more of such events [of default]," it is clear that this more general portion of paragraph 21, when viewed in context, does not apply to a default for nonpayment of rent. Instead, given the immediately preceding portion of paragraph 21 that specifically addresses the nonpayment of rent, the notice provision can only be read reasonably to apply to the other events of default listed in paragraph

21.[7] See *Rader* v. *Valeri*, 223 Conn. App. 243, 268–69, 308 A.3d 66 (more specific provisions of agreement control over standardized and more general ones), cert. denied, 348 Conn. 959, 312 A.3d 37 (2024); *Grogan* v. *Penza*, 194 Conn. App. 72, 81, 220 A.3d 147 (2019) ("[i]t has been well settled that the particular language of a contract must prevail over the general" (internal quotation marks omitted)).

Because the language of the sublease agreement is unambiguous with respect to the consequences of default for the nonpayment of rent, the court correctly declined to consider evidence of the parties' course of performance in its interpretation of the agreement and properly concluded that the language of the lease controls. See *19 Perry Street, LLC* v. *Unionville Water Co.*, supra, 294 Conn. 625 (declining to consider conduct of parties in construing contract and concluding that "the language of the lease controls"); *Heyman Associates No. 5, L.P.* v. *FelCor TRS Guarantor, L.P.*, supra, 153 Conn. App. 403 (consideration of parties' conduct permitted in contract interpretation only when contract is ambiguous); see also *Poole* v. *Waterbury*, 266 Conn. 68, 97, 831

---

[7] In addition to the nonpayment of rent, paragraph 21 provides that the following occurrences shall constitute a default under the sublease: "Any breach by Sublessee to observe or perform any of its other obligations under this Sublease, which shall continue for ten (10) days after notice in writing to Sublessee of such default, and in connection with which Sublessee shall not have in good faith commenced performance if full performance cannot be reasonably had within the ten (10) day period . . . [t]o the extent permitted by law, Sublessee becoming insolvent or bankrupt, or making an assessment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency law by or against Sublessee if such proceeding or case is not discharged within sixty (60) days . . . Sublessee vacating or abandoning the Premises (failure to occupy and operate the premises for ten (10) consecutive days shall be deemed an abandonment) or ceasing its use of the Premises for the purpose set forth above . . . [t]he transfer, assignment, encumbrance or sale of this Sublease or Sublessee's right thereunder by Sublessee, except in any manner herein permitted . . . [and] [a]ny breach by the Sublessee to observe or perform its obligation under this Sublease."

A.2d 211 (2003); *Perez* v. *Carlevaro*, 158 Conn. App. 716, 722, 120 A.3d 1265 (2015). Accordingly, the court properly limited its analysis to the written terms of the agreement.

## II

We next consider the defendants' contention that the court improperly failed to find that the parties' course of performance modified the terms of their sublease agreement to require the plaintiff to provide the defendants with a pretermination notice and a ten day cure period for the nonpayment of rent. The plaintiff argues that a written modification clause in the parties' agreement precluded a finding of a modification based on any course of performance between the parties. We agree with the plaintiff.

"For a valid modification to exist, there must be mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense. . . . *Modification of a contract may be inferred from the attendant circumstances and conduct of the parties.*" (Emphasis in original; internal quotation marks omitted.) *Alarmax Distributors, Inc.* v. *New Canaan Alarm Co.*, 141 Conn. App. 319, 329, 61 A.3d 1142 (2013). "A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." (Internal quotation marks omitted.) *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 822, 3 A.3d 992 (2010).

"The question of whether the parties to a contract agreed to a modification of its terms is ordinarily an issue of fact." *RBC Nice Bearings, Inc.* v. *SKF USA, Inc.*, 146 Conn. App. 288, 298, 78 A.3d 195 (2013), rev'd in part on other grounds, 318 Conn. 737, 123 A.3d 417 (2015). "The resolution of conflicting factual claims falls

within the province of the trial court. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witness." (Internal quotation marks omitted.) *Alarmax Distributors, Inc.* v. *New Canaan Alarm Co.*, supra, 141 Conn. App. 329–30.

The question of whether the parties' agreement limited their ability to make a modification without a writing, however, presents a legal issue subject to plenary review. See *RBC Nice Bearings, Inc.* v. *SKF USA, Inc.*, supra, 146 Conn. App. 298. As indicated previously in this opinion, "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct . . . ." (Internal quotation marks omitted.) Id., 298–99.

In the present case, the court did not make a finding that the parties intended to modify their agreement. The defendants argue that it was "clearly erroneous for the trial court to fail to find that the plaintiff's conduct gave rise to a modification of the lease" on the basis of the "uncontroverted evidence establishing the course of performance . . . ."

In support of their argument, the defendants rely on *RBC Nice Bearings, Inc.* v. *SKF USA, Inc.*, 318 Conn. 737, 123 A.3d 417 (2015). That decision, however, undermines, rather than supports, the defendants' position. In that case, the trial court concluded that the evidence presented clearly demonstrated that an annual minimum purchase requirement set forth in an agreement between the parties had been modified by the conduct of the parties. Id., 745. In the alternative, the court found that, for certain years, the plaintiffs waived their right to enforce that minimum purchase requirement. Id. On appeal, this court reversed the judgment of the trial court, concluding in relevant part that (1) modification based on the parties' course of performance was barred by a written modification clause in the parties' agreement, and (2) the trial court's finding of waiver was clearly erroneous. Id., 746. Our Supreme Court reversed in part the judgment of this court on the issue of waiver, concluding that "[t]he parties' undisputed course of performance and course of dealing . . . adequately support[ed] the trial court's finding of continuing waiver." Id., 757. As to the issue of modification, however, our Supreme Court agreed with this court's analysis, explaining: "The Appellate Court properly rejected [the trial court's finding that the parties modified their agreement], concluding, as a matter of law, that any modification of the . . . agreement by the parties' course of performance was barred by the contractual provision requiring that modifications be in writing." Id., 758.

In the present case, the defendants do not claim that the plaintiff waived its right to enforce any of the terms of the sublease agreement governing the payment or nonpayment of rent.[8] Instead, the defendants contend

---

[8] The defendants' appellate briefs contain some discussion of waiver in the context of summarizing *RBC Nice Bearings, Inc.* v. *SKF USA, Inc.*, supra, 318 Conn. 737. At oral argument before this court, however, the defendants' counsel confirmed that the defendants' claim is one of modification, not waiver.

that the parties modified their agreement through their course of performance, which claim was unavailing in *RBC Nice Bearings, Inc.* See id.; see also id., 750–51 (explaining differences between waiver and modification). As in *RBC Nice Bearings, Inc.*, the parties' sublease agreement in the present case contains a written modification clause. Specifically, paragraph 43 of the sublease agreement sets forth that "[t]his Sublease contains the entire agreement between the parties and shall not be modified in any manner except by an instrument in writing executed by the parties, their administrators, executors, successors or assigns." Thus, like in *RBC Nice Bearings, Inc.*, "any modification of the . . . agreement by the parties' course of performance was barred by the contractual provision requiring that modifications be in writing."[9] *RBC Nice Bearings, Inc.* v. *SKF USA, Inc.*, supra, 318 Conn. 758. Accordingly, the trial court properly relied on the written terms of the sublease agreement to conclude that the plaintiff was not required to provide the defendants with a pretermination notice and an opportunity to cure their default.

The judgment is affirmed.

In this opinion the other judges concurred.

---

In addition, we note that subsection (d) of paragraph 3 of the sublease agreement in the present case contains a waiver clause, which provides: "Any extension of time for the payment of any installment of rent *shall not be a waiver* of the rights of [the plaintiff] to insist on having all other payments of rent made in the manner and the time herein specified. . . ." (Emphasis added.)

[9] The defendants do not argue that the letters from King to Duong—or any other writing—would satisfy the written modification clause.