******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ECR 2, LLC *v.* RASCHID THOMPSON
## (AC 47702)

Alvord, Cradle and Westbrook, Js.*

*Syllabus*

The defendant tenant appealed from the trial court's judgment of possession for the plaintiff landlord in the plaintiff's summary process action. The defendant claimed, inter alia, that the court erred in rejecting his special defense in which he alleged that he had a right to cure his nonpayment of rent. *Held*:

The defendant's claim that the trial court violated his right to due process in denying his motion for a continuance of the trial and in refusing to consider his motion to preclude certain evidence was unavailing, as he failed to identify, either to the trial court or in his brief to this court, which of his due process rights were violated, his identification of those rights for the first time during oral argument to this court was improper, and the record was inadequate to review any challenge to the trial court's decision not to consider his proposed motion to preclude, as the defendant failed to preserve the record by filing the motion.

This court could not conclude that the trial court erred in relying on a legally correct definition of wilfulness in rejecting the defendant's special defense of equitable nonforfeiture, the defendant having presented no authority requiring the trial court to apply a specific definition.

The trial court properly rejected the defendant's claim that he had a right to cure his nonpayment of rent, as the unambiguous language of the parties' lease provided that the defendant's failure to pay his rent on the first of the month or within nine days thereafter would constitute a default under the lease and he would immediately forfeit all rights to occupy the apartment, clearly indicating that there was no right to cure once the defendant defaulted, and, once the notice to quit had been served on him, any payments he made were for use and occupancy only.

Argued February 18—officially released May 13, 2025

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of New Haven, Housing

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Session, where the court, *Stone, J.*, denied the defendant's motions for summary judgment and for a continuance; thereafter, the case was tried to the court, *Stone, J.*; judgment for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*Darren J. Pruslow*, with whom was *Cyd O. Oppenheimer*, for the appellant (defendant).

*Richard W. Callahan*, for the appellee (plaintiff).

*Opinion*

CRADLE, J. In this summary process action, the defendant, Raschid Thompson, appeals from the judgment of possession, rendered after a court trial, in favor of the plaintiff, ECR 2, LLC. On appeal, the defendant claims that the court (1) violated his constitutional right to due process by denying his motion for a continuance of the trial date and refusing to consider his motion to preclude evidence and testimony that had not previously been disclosed by the plaintiff; (2) applied the wrong legal standard in rejecting his special defense of equitable nonforfeiture; and (3) erred in rejecting his special defense that he had a right to cure, and did cure, his nonpayment of rent. We affirm the judgment of the trial court.

The following facts, as set forth by the trial court, and procedural history are relevant to our consideration of the defendant's claims on appeal. "The defendant is a veteran who was honorably discharged after serving in the United States Air Force from 1993 to 1997. He receives [United States Department of] Veterans Affairs disability benefits as well as rental assistance and [the assistance of] a case management counselor through the [United States] Department of Housing and Urban Development-VA Supportive Housing (HUD-VASH) program.

"The plaintiff is the owner-landlord of 51 Whiting Street, unit 5, in Hamden (premises). The plaintiff entered into a written lease agreement with the defendant for the use and occupancy of the premises from December 15, 2023, until November 30, 2024. The total monthly rent is $1340 per month due on the first of the month with a nine day grace period. The defendant's portion is $93 per month, and HUD-VASH pays the balance.

"The defendant paid his portion of the prorated rent upon the signing of the lease in December but did not immediately move in due to a rodent and cockroach infestation. He informed the plaintiff's property manager, Christina Young, of the infestation, which was promptly remediated. In January, the defendant moved in and noticed additional issues with the apartment, including not having a mailbox key and a crack in the door that allows rodents to enter. As a result of these problems, the defendant did not pay rent in January. By February, the defendant still did not have a mailbox key, and so, did not pay February rent. When he was assessed a late fee, the defendant complained by phone to Young. Young told the defendant that he should make his complaint through the plaintiff's online portal and that she would remove the late fee. After the defendant used the portal to inform the plaintiff only about the mailbox key, he received a key within twenty-four to forty-eight hours. After the mailbox key issue was resolved, the plaintiff reissued the $50 late fee when the defendant still did not pay February rent.

"The relationship between the defendant and Young continued to deteriorate and broke down completely after the defendant called Young a vulgar name when she texted him about his late rent payments. Thereafter, Young decided that all communications regarding the premises would take place through the defendant's HUD-VASH counselor. The defendant's counselor did

communicate the continuing issues with the premises, including a clogged kitchen sink and dishwasher, and malfunctioning outlets, but the defendant did not use [the] online portal to notify the plaintiff about them, and no work orders were placed for those issues. Instead, the defendant contacted [the] Hamden Housing Authority and asked for an inspection. The inspection took place on May 9 and confirmed some of the defendant's complaints, requiring the plaintiff to correct them.

"The defendant was served a notice to quit by abode service on March 2, 2024, for 'nonpayment of rent within the grace period provided for residential property' with a quit date of April 7. The notice also indicated that any future payments would be accepted 'for reimbursement of costs and for use and occupancy only . . . .' A letter was also sent to the New Haven Housing Authority, as the section 8 rental assistance administrator, that a notice to quit had or would be served on the defendant. The defendant, however, did not receive the notice [to quit] until March 10, as he was out of town. Upon receipt, the defendant reached out to his HUD-VASH counselor for advice. At some point prior to April 3, Young communicated to the defendant and his HUD-VASH counselor that, in addition to the defendant's portion of the rent from January to April, he would also have to pay $375 to reimburse the plaintiff for the legal fees associated with serving the notice to quit. On April 3, the defendant purchased and mailed to the plaintiff's attorney four money orders for $93 each and indicated that they were for January through April rent. On April 5, Young emailed the defendant and [his] HUD-VASH counselor, informing them that she had received the money orders and indicating that they could only be accepted as use and occupancy payments. She further indicated that [the] $375 fee remained, which would increase to $1600 after April 7. The defendant agreed

to the payments being [for] use and occupancy but has not paid the $1600 legal fees or $50 late fee. He remains in possession of the premises.”

On April 9, 2024, the plaintiff commenced this summary process action seeking immediate possession or occupancy of the premises. The plaintiff alleged that it had served on the defendant a notice to quit on the ground that he had failed to pay the rent when it was due or within the grace period provided in the lease, but, despite that notice, the defendant continued to remain in possession of the premises and had refused to vacate it.

On May 1, 2024, the defendant filed a notice with the court indicating that, on that date, he had served upon the plaintiff discovery requests for production and interrogatories pursuant to Practice Book § 13-2.

On May 6, 2024, the defendant filed an answer and special defenses to the plaintiff's complaint. As to the allegation that the defendant had failed to pay the full rent when it was due, the defendant left the plaintiff to its proof. By way of special defense, the defendant alleged that he had cured his failure to pay the rent for the premises on April 3, 2024, before the April 7, 2024 quit date, when he sent four money orders to the plaintiff in the amounts of $93 each for the months of January through April, 2024. The defendant also alleged that the defense of equitable nonforfeiture precluded eviction in this case. In support of that defense, the defendant alleged, inter alia, that his nonpayment of rent was based on a rodent and cockroach infestation of the premises, in addition to a failure by the plaintiff to provide him with a key to his mailbox, despite having requested one three times. He alleged that, if evicted, he would lose his housing voucher and that “[t]he plaintiff's choice to pursue this summary process action against a disabled veteran with case management, in

the face of payment of the full arrearage prior to the quit date, is unethical, immoral, unreasonable, and unkind.'' The plaintiff denied the defendant's special defenses.

Also on May 6, 2024, the defendant filed a motion for summary judgment. The defendant argued that there was no genuine issue of material fact that he had paid the arrearage owed to the plaintiff for his nonpayment of rent in full prior to the quit date and that the only outstanding amount due to the plaintiff was its claimed legal fees of $1600. The defendant argued that he was entitled to judgment as a matter of law on the basis of his special defenses—that he had cured his nonpayment of rent and that the doctrine of equitable nonforfeiture precluded eviction in this case. On May 7, 2024, the plaintiff filed an objection to the defendant's motion for summary judgment on the ground that a genuine issue of material fact existed.

On that same date, May 7, 2024, the court sent notices to the parties scheduling a hearing on the defendant's motion for summary judgment and the plaintiff's objection thereto, and trial on the summary process complaint for May 23, 2024.

On May 23, 2024, the court, *Stone, J.*, first heard argument on the defendant's motion for summary judgment. After hearing arguments from both parties, the court orally denied the motion for summary judgment on the ground that a genuine issue of material fact existed. The court explained: ''I am going to deny the motion for summary judgment. I think there is a question of fact as to whether the nonpayment was cured or whether it could be cured. I also recognize that, you know, under the equitable relief, that findings of fact have to be made. I understand your position . . . that there is no question of fact, but as the trier, I am required to make factual findings regarding whether the equitable doctrine of [non]forfeiture is appropriate in this

action. So, I am going to deny the motion for summary judgment."[1]

After the court denied the defendant's motion for summary judgment, he filed a motion to "stay further proceedings in this action until three days from when the plaintiff has fully and fairly responded to the defendant's interrogatories and requests for production, which were mailed and emailed to the plaintiff on May 1, 2024, as per the notice of discovery concomitantly filed with this court."[2] The defendant argued that, "[i]n support of the motion, the defendant represents that the plaintiff's objection to the defendant's motion for summary judgment alleges that there is at least one issue of material fact in dispute in the instant case. . . . Given that all [of] the facts stated in the plaintiff's objection are in accord with the facts stated in the defendant's motion for summary judgment . . . one can only conclude that there are facts outside of the record upon which the plaintiff will rely." (Citations omitted.)

The court denied the motion for a continuance from the bench. The court explained: "Discovery is appropriate, but I think the issues in this case are relatively narrow, and I think all of the information that you need you can get during the trial today." In response, counsel for the defendant stated: "Your Honor, I just do want to put my objection to the denial on the record. This is a due process issue. In summary process, obviously, a person's housing is at stake. Due process is very

---

[1] The court issued the following written order as well: "After hearing the argument of counsel, the court finds that there remain questions of material fact, specifically, whether the nonpayment allegation was cured. Additionally, the court must make factual findings to determine any potential equitable relief sought."

[2] Although the defendant's motion was titled a motion to stay, and he purported to seek a stay of the proceedings, he actually sought a continuance of the trial date. We therefore refer to the defendant's motion as a motion for a continuance.

important. And I would just, again for the record, want to point out that, in our earlier discussion with the motion for summary judgment, [opposing] counsel did state that he plans to put on record of extensive interactions between the property manager and my client. My discovery motion was narrowly tailored and specifically asking about interactions between my client and the property manager or the property manager and the case manager, which seem very relevant to the trial. My client is entitled not to have a trial by surprise, and tend to anticipate what the testimony will be and to be able to respond, and I do feel that, by going forward without having that discovery, which again . . . was narrowly tailored, he had the opportunity to object to it, really disadvantages my client."

After the court denied the defendant's motion for a continuance, the defendant then sought permission from the court to file a motion to preclude undisclosed evidence and testimony. After counsel for the plaintiff expressed that he felt "sandbagged" by the defendant's motion in that it was being filed on the day of trial,[3]

---

[3] The following colloquy ensued:

"[The Defendant's Counsel]: Before we move forward, Your Honor, I do not mean to be overly litigious, but I do have one more motion that I would like to file prior to going to trial. It is a motion to preclude undisclosed evidence and testimony. I would ask that I be allowed to file that motion and, if you deny it, to have it on the record.

"The Court: Why didn't you file that?

"[The Defendant's Counsel]: Well, I was in—I have it prepared. . . . I did not feel this motion was appropriate, given the pending motion for summary judgment and then the pending motion for [a continuance]. . . .

"The Court: But, counsel, you did know that, if the motion for summary judgment was denied, that you were going to trial today.

"[The Defendant's Counsel]: Well, I did not know . . . because I had filed the motion for [a continuance] and that was pending.

"The Court: But you didn't file that until this afternoon.

"[The Defendant's Counsel]: Because there would not have been a need for a motion for [a continuance] if the motion for summary judgment was granted.

"The Court: Correct. But attorneys do it all the time in the abundance of caution if . . . my motion for whatever gets denied, I also have these other

the court declined to consider the motion due to its untimeliness.

The court then proceeded on the trial of the matter, at which the plaintiff introduced the testimony of its property manager, Young, and its maintenance manager, Eliyahu Katz.[4] The defendant testified on his own behalf.

On June 3, 2024, the court issued a memorandum of decision concluding that the plaintiff had proven the allegations of its complaint and rejecting the defendant's special defenses. As to his defense that he had the right to cure, and did cure, his nonpayment by sending payments for the outstanding rent to the plaintiff prior to the quit date, the court found that, pursuant to the lease agreement, the plaintiff was required to allow the defendant an opportunity to cure his nonpayments within nine days after the beginning of each month when his portion of the rent became due. The court further found that, "[o]nce the notice to quit, which stated that any future payments would be for use and occupancy only, was served, however, the defendant's opportunity to cure was extinguished." As to the defendant's second special defense of equitable nonforfeiture, the court found that the defendant did not act with clean hands and therefore that his nonpayment of rent was wilful. The court therefore rendered judgment of possession in favor of the plaintiff but stayed the execution of the judgment through July 31,

motions that could have been heard and at least considered, and [the] plaintiff's counsel could have had an opportunity to review them and respond to them or at least be able to say something today before trial started, but we're here right now. It is almost three o'clock on the day of trial."

The court concluded: "I mean, you had an opportunity, you knew that it was a possibility that your motion for summary judgment could be denied and that you were potentially going to go to trial today . . . and you chose not to file your motion to preclude. So, I'm not going to consider that at this time."

[4] Katz also was a principal of the plaintiff.

2024, and ordered the defendant to continue to make use and occupancy payments to the plaintiff.[5] This appeal followed.

## I

The defendant first claims that the court violated his constitutional right to due process by denying his motion for a continuance of the trial and refusing to consider his motion to preclude evidence and testimony that had not previously been disclosed by the plaintiff.[6]

When the trial court denied his motion for a continuance, the defendant argued, inter alia, that "[t]his is a due process issue. In summary process, obviously, a person's housing is at stake. Due process is very important." The defendant essentially reiterates that argument to this court, arguing that he has a constitutional right to housing as a "welfare entitlement . . . ." Even if we were to credit the defendant's argument that he has a constitutional property interest in subsidized housing, he failed to identify, either to the trial court or in his brief to this court, which of his due process rights were violated. At oral argument before this court, the defendant asserted for the first time that his constitutional rights to confrontation and cross-examination had been violated. "[I]t is well settled that arguments cannot be raised for the first time at oral argument." (Internal quotation marks omitted.) *Vaccaro* v. *Shell Beach Condominium, Inc.*, 169 Conn. App. 21, 46 n.28,

[5] On July 18, 2024, the parties entered into a stipulation that the defendant would pay $93 each month for use and occupancy of the premises while this appeal is pending.

[6] The defendant argues, for the first time in his reply brief, that the court's denial of his motion for a continuance and failure to consider his motion to preclude constituted an abuse of discretion. "[I]t is . . . a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 211 Conn. App. 77, 101, 271 A.3d 1058, cert. denied, 343 Conn. 924, 275 A.3d 1213, cert. denied sub nom. *Lewis* v. *Quiros*, U.S. , 143 S. Ct. 335, 214 L. Ed. 2d 150 (2022).

148 A.3d 1123 (2016), cert. denied, 324 Conn. 917, 154 A.3d 1008 (2017). Additionally, the defendant did not file a motion to preclude previously nondisclosed evidence with the trial court.[7] The record is therefore inadequate to review on appeal any challenge to the court's decision not to consider the defendant's proposed motion. See *Nedder* v. *Nedder*, 226 Conn. App. 817, 822 n.2, 320 A.3d 180 (2024) ("[i]t is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review" (internal quotation marks omitted)). The defendant's claim that his right to due process was violated therefore fails.

## II

The defendant next claims that the court applied the wrong legal standard in rejecting his special defense of equitable nonforfeiture. Specifically, the defendant argues that the court used an incorrect definition of "wilful." We are not persuaded.

"The doctrine of equitable nonforfeiture is a defense implicating the right of possession that may be raised in a summary process proceeding, and is based on the principle that [e]quity abhors . . . a forfeiture. . . . Equitable principles barring forfeitures may apply to summary process actions for nonpayment of rent if: (1) the tenant's breach was not [wilful] or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable. . . . Regarding the first requirement, we have explained that [wilful] or

---

[7] We note that the record does not reflect, nor does the defendant argue, that the court prevented the defendant from filing his motion to preclude. The court simply declined to consider the defendant's proposed motion due to its untimeliness. The defendant should have filed his motion to properly preserve his claim on appeal. See Practice Book § 61-10 (a). He failed to do so.

gross negligence in failing to fulfill a condition precedent of a lease bars the application of the doctrine of equitable nonforfeiture. . . . In circumstances involving the nonpayment of rent, we have construed strictly this threshold requirement in deciding whether to grant equitable relief." (Citations omitted; internal quotation marks omitted.) *Boccanfuso* v. *Daghoghi*, 337 Conn. 228, 239–40, 253 A.3d 1 (2020).

In addressing the defendant's claim of equitable nonforfeiture, the court explained: "[The defendant] claims that his intentional withholding of rent was based on his housing conditions and his ignorance of the prohibition against self-help. The defendant further asserts that, once he received the notice to quit, he sought advice, and paid use and occupancy for January through April. He maintains that, as a disabled veteran with case management who will likely become homeless if evicted, the pursuit of summary process is unethical, immoral, unreasonable and unkind. The defendant has not established by a preponderance of the evidence that the court should exercise its equitable powers under these circumstances. . . .

"In the present case, the defendant has not produced any evidence that his intentional nonpayment of rent was accompanied by a good faith intent to comply with the lease or a good faith dispute over the meaning of the lease. The lease provides the procedure for reporting housing condition issues to the plaintiff. Section 3.2 of the lease agreement requires the defendant to 'report any damage or problem immediately upon discovery' and indicates that the plaintiff's compliance with or response to 'any oral request regarding security or nonsecurity matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; [and] other conditions that pose a

hazard to the property, or your health, or safety.' The defendant not only signed the lease containing this provision but actually used the procedure to resolve his mailbox key issue. The defendant told Young that he did not pay February rent and should not have a late fee because he had not yet received a mailbox key. She informed him that he needed to use the online portal to make a request and removed the late fee. Once the defendant did, the plaintiff resolved the mailbox key issue in twenty-four to forty-eight hours. But, even after the reason for the withholding, his lack of a mailbox key, was fully resolved, the defendant still did not pay his February rent. In fact, he did not pay February rent until after the notice to quit was issued. The defendant's actions do not demonstrate a good faith intent to comply with the lease. The defendant was well aware of the process for prompt remediation of any housing conditions, but he presented no evidence that he ever sought to engage in that process again. Instead, he waited another nearly [two and one-half] months, not to request redress of his housing problems through the online portal, but to file a complaint with the Hamden Housing Authority. . . .

"The defendant does not claim that he is not required to pay his portion of the rent, nor could he claim, or prove, that the plaintiff breached the lease agreement. The defendant chose not to use the plaintiff's official reporting system after the mailbox key issue was resolved, which would have triggered the plaintiff's obligations to fix any issues. He was so aggressive toward Young that she refused to interact with him directly. Even if the defendant and Young could not communicate with each other, due to the defendant's own actions, nothing prevented him from continuing to use the online portal to seek resolution of his housing condition issues. Such actions demonstrate that the defendant's nonpayment was wilful, and he was not acting

with clean hands. Therefore, the defendant's second special defense fails." (Citations omitted.)

The defendant contends that, in so ruling, the court applied an incorrect legal standard in determining whether his nonpayment of rent was wilful. "The plenary standard of review applies to the preliminary issue of whether the court applied the correct legal standard in evaluating [a defendant's] special defense."[8] (Internal quotation marks omitted.) *Milford Redevelopment & Housing Partnership* v. *Glicklin*, 228 Conn. App. 593, 616, 325 A.3d 971 (2024), cert. denied, 351 Conn. 902, 329 A.3d 239 (2025).

Our Supreme Court has held that "[a] court of equity will apply the doctrine of clean hands to a tenant seeking . . . equitable relief; thus, a tenant whose breach was [wilful] or grossly negligent will not be entitled to relief. . . . It is axiomatic that, [when] a [party] seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue." (Citation omitted; internal quotation marks omitted.) *Boccanfuso* v. *Daghoghi*, supra, 337 Conn. 245. "[A] tenant's intentional nonpayment of rent does not require a finding that the nonpayment is wilful under the equitable nonforfeiture doctrine if nonpayment is accompanied by a good faith intent to comply

---

[8] Ordinarily, "[w]e employ the abuse of discretion standard when reviewing a trial court's decision to exercise its equitable powers." (Internal quotation marks omitted.) *Boccanfuso* v. *Daghoghi*, supra, 337 Conn. 239. The defendant has made clear, however, that his challenge to the court's rejection of his equitable defense is limited to his claim that the court applied the incorrect legal standard. Specifically, in his appellate brief, the defendant states: "The defendant acknowledges that, when the question before the Appellate Court is whether the trial court's choice to withhold equitable relief was unreasonable or unjust, the proper standard of review is abuse of discretion. . . . However, this is *not* the question before this court. The question before this court is whether the [trial] court applied the correct legal standard in determining whether the defendant was entitled to equitable relief and, under such circumstances, plenary review is required." (Citation omitted; emphasis in original.)

with the lease or a good faith dispute over the meaning of a lease." (Internal quotation marks omitted.) Id., 241– 42. "[W]e [also] have previously noted that wilful is a word of many meanings, and its construction [is] often . . . influenced by its context . . . ." (Citation omitted; internal quotation marks omitted.) Id., 246–47.

Consistent with the aforementioned principles, the court found that the defendant did not act with clean hands and did not demonstrate a good faith intent to comply with the lease in that he did not notify the plaintiff of his issues with the conditions of the premises in writing as required by the lease. The defendant contends that the court should have based its wilfulness determination on whether his nonpayment was " 'not without just cause or excuse' " or whether it constituted " 'mere neglect' " in that he relied on the advice of his HUD-VASH counselor. Although those may have been alternative measures of the defendant's wilfulness, the defendant has cited no authority, nor are we aware of any, that requires the trial court to apply a specific definition of wilfulness. Accordingly, we cannot conclude that the trial court's reliance on a recognized and legally correct definition of wilfulness constituted error.

## III

The defendant finally claims that the court erred in rejecting his special defense that he had a right to cure, and did cure, his nonpayment of rent. We disagree.

In addressing the defendant's argument that he cured his nonpayment of rent, the court reasoned: "The defendant contends in his first special defense that he had the right to cure, and did cure, his nonpayment prior to the April 7 quit date when he sent four money orders to the plaintiff's counsel via certified mail for his portion of rent that was due for January through April. He argues that the court should apply the contract law principle articulated in *Centerplan Construction Co., LLC* v. *Hartford*, 343 Conn. 368, [412, 274 A.3d 51]

(2022), that, when a contract is silent as to notice and cure rights, the right to cure is implied unless expressly waived.

"That principle is inapplicable to this case, as the lease agreement is not silent as to the defendant's notice and cure rights. Section 1.3 of the lease agreement states that the defendant 'must pay your rent on or before the 1st day of each month within 10 days of grace period. . . . If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized.' Similarly, section 4.2 of the lease agreement states: 'You'll be in default under this lease agreement if you do not make every rent payment by the tenth (10th) calendar day of the month when such payment is due or if you . . . [violate] any terms of this Lease Contract including but not limited to the following violations: failure to pay rent or other amounts that you owe when due . . . . If you are in default for any reason, we, at our option, pursue any and all remedies available to us pursuant to Connecticut law.' These provisions are consistent with General Statutes § 47a-15a,[9] which defines a grace period as the nine day time period after the first day that rent is due and unpaid.

"By the provisions of the lease agreement and state law, the plaintiff was required to allow the defendant an opportunity to cure his nonpayments within nine days after the beginning of each month when his portion of the rent payments became due. The plaintiff could have chosen to accept payment after the 10th day but before the notice to quit was served. Once the notice to quit, which stated that any future payments would

---

[9] General Statutes § 47a-15a (a) provides: "If rent is unpaid when due and the tenant fails to pay rent within nine days thereafter or, in the case of a one-week tenancy, within four days thereafter, the landlord may terminate the rental agreement in accordance with the provisions of sections 47a-23 to 47a-23b, inclusive. For purposes of this section, 'grace period' means the nine-day or four-day time periods identified in this subsection, as applicable."

be for use and occupancy only, was served, however, the defendant's opportunity to cure was extinguished. . . . Because the defendant did not pay his rent portion prior to service of the notice to quit, his special defense must fail." (Citation omitted; footnote added.)

The defendant claims that the court erroneously found that the lease agreement was not silent as to notice and cure rights and, therefore, erred in holding that he had no common-law right to cure. The defendant's claim "presents a question of contract interpretation because a lease is a contract, and, therefore, it is subject to the same rules of construction as other contracts. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]. . . .

"The intent of the parties as expressed in [writing] is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing]." (Citation omitted; internal quotation marks omitted.) *Gateway Development/East Lyme, LLC* v. *Duong*, 227 Conn. App. 38, 46, 321 A.3d 489 (2024).

In arguing that the court erroneously found that the lease agreement was not silent as to the right to cure, the defendant asserts that the court erred in treating the nine day grace period contained in the lease agreement as a cure period. He contends that a grace period is not a cure period. Because the defendant has pro-

vided no more than a conclusory statement in this regard, unaccompanied by any legal authority, we decline to address this argument. See *MacDermid, Inc.* v. *Leonetti*, 328 Conn. 726, 748, 183 A.3d 611 (2018) (actual analysis, not mere assertions, is required for briefing to be adequate).

Moreover, the unambiguous language of the lease agreement provided notice to the defendant that his failure to pay his rent on the first of each month or within nine days thereafter would constitute a default of the agreement and that, "if [his] rent [was] delinquent, [he] immediately forfeit[ed] all rights to occupy the apartment any longer . . . ." That language clearly indicates that, outside of the nine day grace period, there is no right to cure once a tenant defaults on his rent obligation. See *Gateway Development/East Lyme, LLC* v. *Duong*, supra, 227 Conn. App. 47–48 (plain and unambiguous language of sublease agreement made clear that pretermination notice and cure period were not required in context of default for nonpayment of rent where agreement provided that, "if the defendants fail to pay rent within ten days after it is due, the plaintiff may 'immediately initiate' legal action to recover possession of the premises, 'without prior notice' to the defendants"). We therefore conclude that the defendant's argument that he had a right to cure his nonpayment of rent is unavailing.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The defendant argues in his reply brief that the provision of General Statutes § 47a-23 that requires a landlord to give a defaulting tenant three days notice in the notice to quit must be read to mean that "the time between the service of the notice [to quit] and the quit date is the mandatory reasonable time to cure said breach." Not only does this court not consider claims made for the first time in a reply brief; see *Lewis* v. *Commissioner of Correction*, 211 Conn. App. 77, 101, 271 A.3d 1058 (arguments cannot be raised for first time in reply brief), cert. denied, 343 Conn. 924, 275 A.3d 1213, cert. denied sub nom. *Lewis* v. *Quiros*,      U.S.     , 143 S. Ct. 335, 214 L. Ed. 2d 150 (2022); but this argument has no basis in the law.